## McLELLAN *versus* REED *& al.*

If a vessel be let on hire to be used and sailed without charge for repair or other expense to the owner, he will not be liable for supplies and outfits, procured by the hirer.

This rule is equally applicable, whether the contract of hiring be or be not known to the party furnishing the articles; and whether the person letting the vessel be owner of the whole or only of an undivided part.

ON FACTS AGREED.

ASSUMPSIT for supplies and outfits for the little schooner

McLellan *v.* Reed.

Boxer upon a fishing voyage.  She was owned, one third by Reed and the residue by John Hodgdon and Jackson Hodgdon, the other defendants.  Reed let his part, for six months, to John Hodgdon, under a written contract by which the hirer was to pay a stipulated price, and to use and sail the vessel *in the fishing business* without any expense to Reed " upon the hull, sails, rigging, cables, anchors, boats, or any other expense whatever."  To this contract the parties respectively bound themselves under a penalty of one hundred dollars.

Jackson then took command of the vessel, and he and John sent her on a fishing voyage.  In these proceedings Reed took no part.

Jackson and John purchased articles of the plaintiff on credit, to the amount of $514,19.  Of this amount, $76 were necessaries, and were applied as such, for the vessel; $87 were advances to the crew; the residue was for outfits, including salt.  In making these purchases, John represented himself to be agent for the vessel and owners, and gave to the plaintiff the following paper, signed by himself and Jackson.  " This is to certify that we agree to be accountable for the owners for outfits for schooner Boxer and crew, the coming season."

The plaintiff charged the account to " schooner Boxer and owners."  He subsequently received $35 and $215, from John Hodgdon, which he credited upon the account.

John Hodgdon having deceased, his name has been stricken from the writ.  Jackson has been defaulted.

The case was submitted to the Court; and a discontinuance as to Reed is to be entered with costs, if he is not liable.

*Tallman*, for the plaintiff.

Except for the letting of the vessel by Reed, he would be clearly liable to the plaintiff.  But of that letting the plaintiff had no knowledge.  The decisions that a charterer is *pro hac vice* to be considered as the owner, do not apply in this case.  And such decisions have been sufficiently extended.  The better rule would be that, when one of two innocent persons must suffer, the party who occasions the loss, should be answerable for its consequences.  Those cases have usually

occurred when the *whole* vessel had been chartered, and, perhaps, invariably when the possession was in some person not named in the register as owner. In such cases, there may be some reason for showing *that, in fact,* an agency exists, before founding a liability upon it; and *that* the master is in fact an agent of the owner, before his acts can charge the owner. So when a stranger to the title has the possession and control of a vessel, it is necessary to show that he is in fact agent of the owners, before they can be called on to fulfill his engagements relative to the vessel. This is the utmost extent to which the doctrine has as yet been extended.

In the case at bar all the defendants are owners of the vessel and were so at the time of the furnishing these supplies, and being so, each is deemed the agent of the others, as to the ordinary repairs, employment and business of the ship, in the absence of any known dissent." Story's Agency, § 40. They are thus deemed agents because they are part owners and are also general agents for the particular vessel. Each part owner then holds out to the world that they are agents, and the law therefore compels them to guaranty the acts of each. Whether they have or not exceeded their private instructions, can have no operation on third persons without notice. Story on Agency, § 298.

The owner is bound by the contracts of the master, notwithstanding any private agreement. Part owners are agents by law. Any one may avoid liability by showing that he derived no benefit of the ship, and had no possession of her. It is however no defence that the particular voyage was unauthorized or expressly forbidden. *Hardy* v. *Sprowl*, 29 Maine, 259.

In the case at bar, Jackson and John Hodgdon did the trading. John represented himself as agent for the vessel and owners, as well as part owner; in that capacity, together with Jackson, he gave on the 10th of April, a certificate that the owners would be accountable for the outfits of the schooner. Both of them repudiated the agreement, and this they had a right to do, though under liability to the forfeiture

of $100 as a penalty. By that repudiation, the contract of letting became a nullity, and Reed, therefore, became accountable as before. In *Packard* v. *Sloop Louisa*, 2 Woodbury & Minot, 55, Justice Woodbury says, — "There must have been no knowledge of the facts, or the repairs be very durable or the charter must have contemplated it, if the owners are liable for repairs when the master has hired the vessel, and orders them." This is the sound and correct doctrine. It accords with the views and understanding of commercial men and the former universal custom.

This principle, applied to this case, must do substantial justice to the parties.

Further, there was no such letting as to exonerate Reed, upon any of the decisions on which he relies. He never relinquished control of the vessel, for he directed in what business she should be employed. He insisted and obtained a stipulation, that she should go into the fishing business only. The right in the *hirer* to direct the voyage, has been much relied upon in the decisions. In *Lyman* v. *Redman*, 23 Maine, 295, it is said "It is the entire control and direction of the vessel, (by the hirer,) and the surrender by the owners, of all power over her, for the time being," which will exonerate them. Reed relied on Hodgdon's indemnity, not on any exemption by the rules of law.

*Paine*, for the defendant, Reed.

Rice, J. — The law may be deemed settled, that where a vessel is let or hired, whether by written charter or parol contract, and the possession is transferred to the hirer, and he sails her at his own expense, and has the entire control, such hirer is to be deemed the owner for the time being, and as such, so far as third parties are concerned, succeeds to all the rights and liabilities of the general owner. 3 Kent's Com. 136; *Skolfield* v. *Potter*, Davis, 392; *Thompson* v. *Snow*, 4 Maine, 265; *Cutler* v. *Thurlo*, 20 Maine, 213; *Taggard* v. *Loring*, 16 Mass. 336; *Thompson* v. *Hamilton*, 12 Pick. 425; *Cutler* v. *Windsor*, 6 Pick. 339; *Perry* v. *Osborn*, 5 Pick. 422.

Reed executed his charter party and delivered possession of his interest in the schooner, to John Hodgdon, on the 7th of April, 1847, at Boothbay. The supplies for which this action was brought, were delivered on board of said schooner at Bath to the order of Jackson Hodgdon and John Hodgdon. The first articles charged in the bill were not delivered by the plaintiff until the 13th of April, some six days after the date of the charter party, and of the delivery of the vessel to Hodgdon. With the purchase of those supplies Reed does not seem to have been in any way connected.

It is contended, however, that inasmuch as he was the general owner, and had given no notice of the letting, he is still liable for the supplies furnished by the plaintiff. Story on Agency, § 298; *Rich* v. *Coe*, 9 Cow. 636.

However the rule of law may have been held, in former times upon this point, the course of judicial decision is now admitted to be in favor of exempting the owners from the liability for ordinary supplies while the vessel is employed under such a contract. *Skolfield* v. *Potter*, Davis, 393; *Reeve* v. *Davis*, 1 Adol. & Ellis, 312. Such is the law in this State. *Cutler* v. *Thurlo*, 20 Maine, 213.

The contract for hire in this case was distinct, and the control of the vessel on the part of the hirer, for the purposes for which she was hired, was absolute, and commenced at the time the charter party was executed and the delivery was taken.

According to the agreement of the parties, plaintiff is to discontinue as to Reed, and he is entitled to his costs.

SHEPLEY, C. J., and WELLS, HOWARD and HATHAWAY, J. J concurred.